# United States Court of Appeals
# for the First Circuit

VERAX BIOMEDICAL INC.,

*Plaintiff-Petitioner*,

v.

AMERICAN NATIONAL RED CROSS,

*Defendant-Respondent*.

On Petition for Review from the United States District Court
for the District of Massachusetts, No. 1:23-cv-10335-PBS
(Hon. Patti B. Saris)

## RESPONDENT'S ANSWER IN OPPOSITION TO
## PETITION FOR INTERLOCUTORY REVIEW

William J. Trach
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000


Alfred C. Pfeiffer, Jr.
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

Melissa Arbus Sherry
Amanda P. Reeves
Jennifer L. Giordano
Peter E. Davis
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Defendant-Respondent American National Red Cross*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendant-Respondent American National Red Cross hereby discloses that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................... i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................ 1

BACKGROUND .......................................................................... 3

    A.    Legal Background ................................................................ 3

        1.    The Sherman Act And United States Instrumentalities .............. 4

        2.    The American National Red Cross ............................................. 5

    B.    Procedural Background ........................................................ 7

REASONS WHY INTERLOCUTORY REVIEW SHOULD BE DENIED ............ 8

    A.    The Order Does Not Involve A Controlling Question Of Law ........... 9

    B.    There Is No Substantial Ground For Difference Of Opinion ............. 14

    C.    An Immediate Appeal Would Not Materially Advance The Ultimate Termination Of This Litigation ........................................... 20

CONCLUSION ......................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Bank of New England Corp.*,
218 B.R. 643 (B.A.P. 1st Cir. 1998)......................................................11, 13, 15

*California Public Employees' Retirement System v. WorldCom, Inc.*,
368 F.3d 86 (2d Cir. 2004) ...............................................................................11

*Camacho v. Puerto Rico Ports Authority*,
369 F.3d 570 (1st Cir. 2004)...............................................................................3

*Caraballo-Seda v. Municipality of Hormigueros*,
395 F.3d 7 (1st Cir. 2005)...........................................................2, 8, 9, 12, 21

*In re City of Memphis*,
293 F.3d 345 (6th Cir. 2002) ............................................................................20

*Department of Employment v. United States*,
385 U.S. 355 (1966).......................................................................................6, 18

*Fasano v. Federal Reserve Bank of New York*,
457 F.3d 274 (3d Cir. 2006) .............................................................................16

*Heng Ren Investments LP v. Sinovac Biotech Ltd.*,
609 F. Supp. 3d 17 (D. Mass. 2022)..................................................................9

*IT&E Overseas, Inc. v. RCA Global Communications*,
747 F. Supp. 6 (D.D.C. 1990).......................................................................5, 16

*Jet Courier Services, Inc. v. Federal Reserve Bank of Atlanta*,
713 F.2d 1221 (6th Cir. 1983) ..........................................................................18

*Lane v. First National Bank of Boston*,
687 F. Supp. 11 (D. Mass. 1988), *aff'd*, 871 F.2d 166 (1st Cir.
1989) ...................................................................................................................14

*McCarthy v. Middle Tennessee Electric Membership Corp.*,
466 F.3d 399 (6th Cir. 2006) .......................................................................3, 19

*McFarlin v. Conseco Services, LLC,*
    381 F.3d 1251 (11th Cir. 2004) ...........................................13, 15, 20

*McGillicuddy v. Clements,*
    746 F.2d 76 (1st Cir. 1984).....................................................2, 14

*Palandjian v. Pahlavi,*
    782 F.2d 313 (1st Cir. 1986)....................................................3, 21

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,*
    506 U.S. 139 (1993)...................................................................13

*Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado,*
    2016 WL 11815752 (D.P.R. July 29, 2016) .................................14

*Sakamoto v. Duty Free Shoppers, Ltd.,*
    764 F.2d 1285 (9th Cir. 1985) ..............................................4, 5, 16

*In re San Juan Dupont Plaza Hotel Fire Litigation,*
    859 F.2d 1007 (1st Cir. 1988)......................................................14

*Sandler v. Eastern Airlines, Inc.,*
    649 F.2d 19 (1st Cir. 1981)..............................................2, 9, 11, 12

*Sea-Land Service, Inc. v. Alaska Railroad,*
    659 F.2d 243 (D.C. Cir. 1981)...........................................3, 4, 16, 17

*Serpa Corp. v. McWane, Inc.,*
    199 F.3d 6 (1st Cir. 1999)...........................................................10

*Trailer Marine Transport Corp. v. Rivera Vazquez,*
    977 F.2d 1 (1st Cir. 1992).............................................................16

*United Air Lines, Inc. v. Gregory,*
    716 F. Supp. 2d 79 (D. Mass. 2010).............................................15

*United States Postal Service v. Flamingo Industries (USA) Ltd.,*
    540 U.S. 736 (2004).................................................5, 16, 17, 18, 19

*United States v. Cooper Corp.,*
    312 U.S. 600 (1941)......................................................................4

*United States v. Reid*,
  888 F.3d 256 (6th Cir. 2018) ...............................................................19

## STATUTES AND REGULATIONS

15 U.S.C. § 1 .........................................................................................4

28 U.S.C. § 1292(b) ...............................................................................9

36 U.S.C. § 300101 ...........................................................................6, 17

36 U.S.C. § 300102 ...........................................................................6, 17

36 U.S.C. § 300104(a)(3)(A)(i) ..............................................................6

36 U.S.C. § 300104 (d)(2)(A) .................................................................6

36 U.S.C. § 300110(a) ............................................................................6

36 U.S.C. § 300110(b) ............................................................................6

36 U.S.C. § 300112(b) ............................................................................7

American National Red Cross Governance Modernization Act of
  2007, Pub. L. No. 110-26, 121 Stat. 103 ............................................6

21 C.F.R. § 606.145(a)..........................................................................10

## INTRODUCTION

This case involves a challenge to the American National Red Cross's ("Red Cross") decision on how best to comply with federal law governing the safety of blood platelets. Federal law requires the Red Cross to perform bacterial mitigation on blood platelets and gives it only three options to do so. The Red Cross picked the innovative new technology that it believes best maximizes platelet safety and availability (pathogen reduction technology). Verax Biomedical Inc. ("Verax") wishes the Red Cross had forgone this safety innovation and chosen something else. Verax brought antitrust and state-law claims, and the district court dismissed the antitrust claims based on one specific ground: the Red Cross is not a "person" under the Sherman Act.

Verax asks this Court to grant interlocutory review of the district court's case-specific, motion-to-dismiss decision, which is not outcome determinative of any claims in this multi-claim case. Alternative grounds exist to dismiss the antitrust claims. The district court disagreed with Verax on the facts, not the law. And this Court rarely agrees to hear interlocutory appeals in any motion to dismiss posture—much less one where reversal would neither terminate nor simplify the case. This is not that rare case.

This Court "adhere[s] to the view that interlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances."

*McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984). To obtain interlocutory review, the petitioner must show that the district court's order "(1) 'involv[es] a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and (3) for which 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Caraballo-Seda v. Mun. of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) (citation omitted). Verax does not satisfy any of these requirements.

*First*, the order does not involve a controlling question of law. The district court dismissed Verax's antitrust claims because the Red Cross is not a "person separate from the United States itself" within the meaning of the Sherman Act. Pet. Ex. 1 at 12 (citation omitted). But the court recognized that the Red Cross had weighty alternative and not-yet-adjudicated grounds for dismissing those same claims. An issue cannot be controlling when the underlying claim would fail for fully independent reasons. *See, e.g.*, *Sandler v. E. Airlines, Inc.*, 649 F.2d 19, 20 (1st Cir. 1981) (per curiam). And this Court rarely grants review of *any* motion-to-dismiss decision, *Caraballo-Seda*, 395 F.3d at 9—especially when the district court granted (rather than denied) the motion.

*Second*, there are no substantial grounds for difference of opinion. The district court applied Verax's preferred legal rule, and simply rejected Verax's argument that the Red Cross's form and function makes it a "person" subject to treble damages

suits under the Sherman Act. That result tracks decades of settled law, tracing back to then-Judge Ruth Bader Ginsburg's opinion in *Sea-Land Service, Inc. v. Alaska Railroad*, 659 F.2d 243 (D.C. Cir. 1981). And Verax's only meaningful claim of conflict—*McCarthy v. Middle Tennessee Electric Membership Corp.*, 466 F.3d 399 (6th Cir. 2006)—relies on reasoning Verax itself rejected in the district court.

*Third*, an immediate appeal would not materially advance the ultimate termination of the litigation. An appeal would not shorten or simplify the litigation, or bring any efficiency benefits at all. And even accepting Verax's contrary assertions—*e.g.,* that trial and discovery time could be saved—those justifications "would often be true" of any "interlocutory appeal[]." *Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986). These generic purported efficiencies cannot overcome the Court's consistent message that interlocutory appeals are to be "hen's-teeth rare." *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004).

This Court should deny the petition to appeal.

## BACKGROUND

### A.    Legal Background

Two pieces of legal context, absent from Verax's petition, shape the underlying dispute: (1) the Sherman Act's historic inapplicability to the United States and its instrumentalities; and (2) the Red Cross's status, responsibilities, and oversight as a federal instrumentality.

3

## 1.    The Sherman Act And United States Instrumentalities

The Sherman Act prohibits unreasonable "[r]estraint[s] of [t]rade," 15 U.S.C. § 1, but it does not reach every conceivable entity.  Only "person[s]," as defined by Congress, are covered.  *Id.*; *see Sea-Land*, 659 F.2d at 199.  In *United States v. Cooper Corp.*, the Supreme Court held that the United States government is not a "person" under the Sherman Act authorized to bring suits for treble damages.  312 U.S. 600, 606 (1941).  Congress then amended the Act to provide that the United States may "sue alleged antitrust law violators for actual, but not treble damages." *Sea-Land*, 659 F.2d at 245.  But Congress left in place the definition of "person." *Id.*

Several decades later, then-Judge Ruth Bader Ginsburg held in *Sea-Land* that the Alaska Railroad, a "United States instrumentality," was not a "person" subject to the Sherman Act.  *Id.* at 246-47.  Reasoning from *Cooper* and Congress's subsequent action, the court held that "Congress did not place the United States or its instrumentalities under the governance of the Sherman Act." *Id.* at 244.  The court rejected the plaintiff's request that the court use "the broad policy of the Sherman Act" to extend that Act's scope to "the United States and its instrumentalities as defendants." *Id.* at 246.

Other courts soon joined *Sea-Land*.  In *Sakamoto v. Duty Free Shoppers, Ltd.*, the Ninth Circuit recognized that "federal instrumentalities" such as the Guam

Airport Authority are not subject to "antitrust liability." 764 F.2d 1285, 1288 (9th Cir. 1985). Over time, the rule came to be known as the "federal instrumentality doctrine." *IT&E Overseas, Inc. v. RCA Glob. Commc'ns*, 747 F. Supp. 6, 11 (D.D.C. 1990).

Then came *United States Postal Service v. Flamingo Industries (USA) Ltd.*, 540 U.S. 736 (2004), a Sherman Act case involving the Postal Service. Invoking *Sea-Land*, the Court agreed that the United States government is not an antitrust "person." *Id.* at 745. Looking to the Postal Service's "statutory designation"—as an "'independent establishment of the executive branch of the Government of the United States'"—the Court held that the Postal Service was not separate from the United States for antitrust purposes. *Id.* at 746 (citation omitted). The Court added that its "conclusion [wa]s consistent with the nationwide, public responsibilities of the Postal Service," noting the Postal Service has "different goals, obligations, and powers from private corporations." *Id.* at 747.

### 2. The American National Red Cross

The Red Cross has long played a vital role in American life. Since its creation in 1881, the Red Cross has supported the U.S. Armed Services and military families, fulfilled U.S. international treaty obligations, and supplied life-saving services to individuals afflicted by disasters. In recognition of these contributions, the Red Cross received a Congressional charter in 1900. *See* Pet. Ex. 1 at 5-6. The Supreme

Court later held that the Red Cross was an "instrumentalit[y] of the United States" immune from state taxation because "both the President and the Congress have recognized and acted in reliance upon the Red Cross'[s] status virtually as an arm of the Government." *Dep't of Emp. v. United States*, 385 U.S. 355, 359-60 (1966).

In 2007, Congress amended the Red Cross's charter to formally designate the Red Cross a "[f]ederally chartered instrumentality of the United States," with the "rights and obligations" of that status. The American National Red Cross Governance Modernization Act of 2007, Pub. L. No. 110-26, §§ 2(a)-(b), 3, 121 Stat. 103, 103-05; *see* 36 U.S.C. § 300101 & note. Federal law expressly tasks the Red Cross with providing "volunteer aid in time of war to the sick and wounded of the Armed Forces," fulfilling U.S. obligations under the "treaties of Geneva," and administering "a system of national and international relief in time of peace" to prevent and mitigate "national calamities." 36 U.S.C. § 300102(1), (4).

The President, the Department of Defense, and Congress all exercise oversight over the Red Cross's activities. The President appoints the "chairman of the board of governors," as well as an advisory council made up of eight to ten "principal officers of the executive departments and senior officers of the Armed Forces." *Id.* § 300104(a)(3)(A)(i), (d)(2)(A). Each year, the Red Cross must submit "a complete, itemized report of all receipts and expenditures" to the Secretary of Defense, and "[t]he Secretary shall audit the report and submit a copy … to

Congress." *Id.* § 300110(a), (b).  The Red Cross must also submit annual reports to five U.S. Senate and five U.S. House of Representatives committees "concerning any trends and systemic matters."  *Id.* § 300112(b).

### B.    Procedural Background

In February 2023, Verax filed this suit alleging the Red Cross had violated the Sherman Act's prohibitions against unlawful tying, exclusive dealing, and attempted monopolization.  Pet. Ex. 1 at 9-10.  Verax also raised three state law claims for unfair competition, defamation, and tortious interference with contractual relations. Verax's antitrust claims assert that the Red Cross unlawfully tied two allegedly separate products or services—blood platelets and mitigation of bacterial contamination in those same platelets—thereby harming Verax's ability to sell hospitals its aftermarket test for bacterial contamination.  Compl. ¶¶ 108-10, Dkt. 1. Although Verax claims harm as a competitor of the Red Cross, *id.* ¶ 109, it has not explained how it competes in the same market given that the Red Cross sells platelets to hospitals and must, per FDA requirements, mitigate bacterial risk in platelets *before* distributing them.  Verax's test, on the other hand, is for hospitals to use on platelets on site as an additional bacterial mitigation measure, after the blood supplier has already performed bacterial mitigation.

The district court granted in part and denied in part the Red Cross's motion to dismiss.  The court dismissed the Sherman Act claims because the Red Cross is not

an "antitrust person" subject to suit under *Flamingo*. Pet. Ex. 1 at 14. While the Red Cross had argued that federal instrumentalities such as the Red Cross are categorically outside the Sherman Act's scope, Verax argued for a rule focused on the entity's form *and* function. *Id.* at 19. The district court agreed with Verax on the test, but disagreed on its application to the facts. The court explained that both the Red Cross's form (its status as a federally chartered instrumentality) and function (its public responsibilities and nonprofit status) established that it was "not a 'person' separate from the United States under the Sherman Act." *Id.* The court did not address the Red Cross's alternative grounds for dismissing Verax's antitrust claims. And the court denied the motion to dismiss Verax's state-law unfair competition and tortious interference with contract claims. *Id.* at 20-25.

On June 26, 2024, the court certified its order for interlocutory review. Pet. Ex. 2.

## REASONS WHY INTERLOCUTORY REVIEW SHOULD BE DENIED

Section 1292(b) provides a narrow exception to the rule that appeals must await final judgment. Certification under this provision "should be used sparingly and only in exceptional circumstances," particularly in cases involving motions to dismiss. *Caraballo-Seda*, 395 F.3d at 9. The party seeking interlocutory appeal must show that the district court's order: "(1) 'involv[es] a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and

(3) for which 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Id.* (quoting 28 U.S.C. § 1292(b)). Although Verax claims these elements are merely flexible "guiding criteria," Pet. 5 (citation omitted), this Court considers them "require[d]" prerequisites to obtaining "[i]nterlocutory appeal[] under § 1292(b)." *Id.* Verax cannot satisfy any of the three.

## A. The Order Does Not Involve A Controlling Question Of Law

Verax's petition founders at the outset because the district court's order does not involve a controlling question of law. A question of law "is 'controlling' if reversal of the order would terminate or significantly alter the action." *Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 609 F. Supp. 3d 17, 21 (D. Mass. 2022) (citation omitted). When there are alternative grounds supporting the same outcome, the question is not "controlling." *See, e.g.*, *Sandler*, 649 F.2d at 20. And it is far less common for an issue to be deemed "controlling" when reversal would expand—not terminate or significantly narrow—the action on remand. That is this case twice over.

*First*, the issue presented in Verax's petition is, by definition, not controlling because reversal would have *no* effect on Verax's Sherman Act claims—which fail on alternative and independent grounds. The Red Cross moved to dismiss Verax's antitrust claims not only because the Red Cross is not a "person" subject to the Sherman Act, but also because Verax has not stated any viable antitrust claim.

Among other things, Verax needed to allege that it has suffered a legally cognizable "antitrust injury"—*i.e.*, that it competes against the Red Cross in the same market and that its injuries flow from a reduction in that competition. MTD 11-12, Dkt. 19.[1] But the complaint's own allegations make clear that the Red Cross is not Verax's competitor in any market. Under FDA regulations, the Red Cross is required to take certain steps to mitigate bacterial contamination *before* it sells those platelets to hospitals. *See* 21 C.F.R. § 606.145(a); Compl. ¶ 8. Verax's test is not approved by the FDA for that purpose; hospitals employ Verax's test only *after* they have purchased treated platelets from the Red Cross, commonly to extend their shelf life. MTD Reply 13, Dkt. 27; *see* Compl. ¶¶ 63-92. So Verax is, at most, a potential aftermarket *supplier* to some hospitals after they buy platelets from the Red Cross. Because the Red Cross and Verax do not sell any products or services that hospital customers have or could reasonably substitute for the same purpose, they are not competitors for purposes of the Sherman Act—and Verax has not established antitrust injury.

This issue was heavily disputed below—indeed, the parties spent more time in briefing and oral argument on antitrust injury than the personhood question. The

---

[1] Only the defendant's consumers or competitors ordinarily suffer a cognizable antitrust injury, a prerequisite to any Sherman Act claim, and Verax plainly is not a consumer. *See Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10-11 (1st Cir. 1999).

district court recognized these were weighty arguments that would require careful consideration. *See* 9/28/2023 Hearing Tr. 4:22-5:1, Dkt. 40. But because the court ruled in the Red Cross's favor on the personhood issue, it declined to resolve those arguments when granting the motion to dismiss. Pet. Ex. 1 at 11-19. And when certifying its order for appeal, the court clarified that it "ha[d]n't even looked at" the alternative grounds and was "not foreshadowing anything" about its view of them. 6/24/2024 Hearing Tr. 8:21-22, Dkt. 59.

All of which is to say that a critical question of antitrust injury (among other issues) remains to be decided at the motion-to-dismiss stage regardless of the outcome of this appeal. Because "at least one alternative basis" for the district court's decision "may exist," the order does not "raise[] a 'controlling question' that should be reviewed on an interlocutory basis." *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 95 (2d Cir. 2004) (citation omitted); *see In re Bank of New England Corp.*, 218 B.R. 643, 652 (B.A.P. 1st Cir. 1998) (recognizing that the same rule applies in the First Circuit).

This Court's decision in *Sandler* is instructive. There, the Court determined that "the section 1292(b) criteria are not met" because "it remains questionable whether the present complaint states a cause of action"—for reasons separate from the issue under review. 649 F.2d at 20. Because the Court was "not in a position to pass on the sufficiency of the complaint," it declined to "address a certified question

which may only be hypothetical." *Id.* So too here: the issue is not controlling because Verax's antitrust claims will fail regardless of how this appeal is resolved.

Verax misunderstands the role that alternative grounds play in the Section 1292(b) analysis. Relegating the issue to a few sentences in discussing the third element, it claims that the Red Cross's alternative grounds are irrelevant because they (a) present "question[s] … of fact, not law, applicable to this case only"; and (b) "are not novel." Pet. 19-20. Verax thus appears to believe that alternative grounds pose an obstacle to interlocutory appeal only where they "could give rise to another interlocutory appeal." *Id.* at 20. That is not the issue: a question cannot be "controlling" if it will not affect the outcome of the case. An appeal that would have no effect on the disposition of even a single claim cannot, of course, "significantly alter" its scope. Pet. 6 (quoting Ex. 2 at 4). *Sandler* confirms as much; no second interlocutory appeal was conceivable there either. 649 F.2d at 20.

*Second*, the case's posture—a partial grant of a motion to dismiss—also weighs heavily against Verax's argument that the order resolves a controlling question of law. As explained, this Court maintains a "general rule" against "interlocutory appeals from a denial of a motion to dismiss" given the risks inherent in encouraging piecemeal appeals at the outset of litigation. *Caraballo-Seda*, 395 F.3d at 9. That rule applies with even greater force to orders partially *granting* a motion to dismiss. Whereas immediate appeal of denial of a motion to dismiss may

lead to a decision "terminat[ing] the action"—the classic example of a controlling question, *In re Bank of New England*, 218 B.R. at 653—the same is not true of an appeal from partial grant of a motion to dismiss. Not only would reversal not terminate the case, it would not simplify or narrow it either; the only consequence would be more litigation and more complexity. This contravenes Section 1292(b)'s purpose. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (resolution on appeal must "serve to avoid a trial or otherwise substantially shorten the litigation").

Verax invokes largely out-of-circuit district court cases granting interlocutory review from immunity decisions, but many involve *defendants* seeking interlocutory review of orders *denying* motions to dismiss on immunity grounds. Pet. 6-7. Granting interlocutory review in that posture makes sense because the immunity, if it applies, would foreclose the plaintiffs' claims and help bring the litigation to a close. And more importantly, immunity would not be worth much if the defendant were forced to proceed to trial. *Cf. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (denial of sovereign immunity immediately appealable collateral order given "'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties'" (citation omitted)). Of the two decisions Verax cites involving plaintiffs seeking review within this Circuit, one was a district court decision involving an immunity question that was

never appealed to this Court. *See Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado*, 2016 WL 11815752, at *3 (D.P.R. July 29, 2016). The other was an Eleventh Amendment immunity case where the state officials were dismissed from the action altogether—avoiding many of the Court's concerns about piecemeal appeals. *See Lane v. First Nat'l Bank of Boston*, 687 F. Supp. 11, 13-14 (D. Mass. 1988), *aff'd*, 871 F.2d 166, 167 (1st Cir. 1989).

Against all of this, Verax says the issue is controlling because it is "'difficult' and 'pivotal,'" claiming this Court has used those terms "as synonyms for 'controlling.'" Pet. 7 (citations omitted). That argument misreads Section 1292(b) and this Court's decisions. The Court has cited the difficult nature of a legal question generally in granting interlocutory appeal—but not when addressing the "controlling question of law" prong. *See id.* (quoting *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988); *McGillicuddy*, 746 F.2d at 76 n.1). Difficulty and novelty have nothing to do with whether an issue is "controlling"; they bear instead on the second prong—whether there is a substantial ground for difference of opinion.

## B. There Is No Substantial Ground For Difference Of Opinion

Verax's claim that there is a substantial ground for difference of opinion rests on a mischaracterization of the district court's decision. Verax argues that "[t]he district court broke new ground by applying the following legal principle … :

'Because ARC is an instrumentality of the United States, it is not a "person" separate from the United States under the Sherman Act.'" Pet. 8 (quoting Pet. Ex. 1 at 19). But the district court never applied that legal principle. The district court determined the Red Cross was "not an antitrust person" based on "both form and function," and the court spent pages of its decision explaining why the Red Cross's function supported its conclusion. Pet. Ex. 1 at 14, 18-19. Verax cannot write that analysis out of the district court decision based on an out-of-context quote.

Verax's effort to reframe the district court's decision is telling. The "form and function" rule that the district court applied is the legal test that *Verax* seeks. The court simply disagreed with how that standard applies to the facts of this case. But the second prong of the interlocutory appeal test requires disagreement over the "actual legal principle itself, not the application of that principle to a particular set of facts." *United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 92 (D. Mass. 2010). "[C]ase specific issues … do not rise to the level of difficulty and significance required." *In re Bank of New England*, 218 B.R. at 653; *accord McFarlin*, 381 F.3d at 1260. Verax recognizes as much when it assures the court that an interlocutory appeal would not be proper over the Red Cross's alternative antitrust arguments (*supra* at 12) because they are "applicable to this case only." Pet. 20. The district court's application of Verax's preferred legal standard to the case-specific facts is hardly the kind of disputed legal principle calling out for interlocutory review.

Regardless of what test is applied, there is no substantial ground to find that the Red Cross is a "person" under the Sherman Act. Since *Sea-Land*, the courts of appeals have recognized that "[t]he Sherman Act … does not expose United States instrumentalities to liability." 659 F.2d at 245. Then-Judge Ginsburg applied the rule to the Alaska Railroad, and courts soon applied it to other federal instrumentalities, such as the Guam Airport Authority. *See Sakamoto*, 764 F.2d at 1288.[2] Under this "federal instrumentality doctrine," "[i]t is well-established that the antitrust laws do not extend to actions of agencies or instrumentalities of the federal government." *IT&E Overseas*, 747 F. Supp. at 11. The Supreme Court reaffirmed these principles in *Flamingo*, holding the Postal Service was "not a separate antitrust person from the United States." 540 U.S. at 748. And courts have recognized that *Flamingo* carried forward the federal instrumentality doctrine. *See Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 282 (3d Cir. 2006) (describing *Flamingo* as holding that the "Postal Service is a federal instrumentality for antitrust purposes"); *cf. Trailer Marine Trans. Corp. v. Rivera Vazquez*, 977 F.2d 1, 8 (1st

---

[2] Verax's assertion (Pet. 11-13) that the "instrumentality" language in *Sea-Land* was dicta ignores that *Sea-Land* considered the Alaska Railroad a "United States instrumentality" and that the court repeatedly stated its holding and reasoning in terms of *all* federal instrumentalities. 659 F.2d at 246.

Cir. 1992) (describing *Sakamoto* as finding the "government of Guam 'an instrumentality' of the federal government" (citation omitted)).[3]

Under these decisions, the Red Cross's status is not an open question: because Congress designated the Red Cross a "[f]ederally chartered instrumentality of the United States," with all the "rights and obligations" of that status, it is not subject to the Sherman Act. 36 U.S.C. § 300101 & note. Had Congress wished to subject the Red Cross to treble damages suits, it would have done so expressly. And the Red Cross's function simply confirms Congress's chosen designation. Like the Postal Service, the Red Cross has "nationwide, public responsibilities," *Flamingo*, 540 U.S. at 747: fulfilling the nation's Geneva Convention obligations; administering "a system of national and international relief in time of peace"; providing aid to "the sick and wounded of the Armed Forces"; and addressing "national calamities." 36 U.S.C. § 300102(1), (4). The Red Cross has "different goals, obligations, and powers from private corporations," *Flamingo*, 540 U.S. at 747: it is a nonprofit that

---

[3] Verax maintains (Pet. 9-10) that a federal-instrumentality rule improperly collapses the two separate inquiries that *Flamingo* commands—first, whether Congress waived the Postal Service's sovereign immunity; second, whether Congress intended to subject the Postal Service to suit under the substantive law at issue. But the Court adopted this rule from *Sea-Land*, calling it the "correct approach," 540 U.S. at 744, and *Sea-Land* categorically holds that federal instrumentalities are not antitrust "persons," 659 F.2d at 245. In reality, the inquiries are merely two different ways an antitrust defendant may not be subject to Sherman Act liability, and the district court properly applied each.

acts "virtually as an arm of the Government" "to perform a wide variety of functions indispensable to the workings of our Armed Forces around the globe." *Dep't of Emp.*, 385 U.S. at 359-60. And the Red Cross is overseen by the President, Secretary of Defense, and Congress. *See supra* at 6-7.

*Flamingo* also refutes two other arguments Verax raises about why the Red Cross must be subject to the Sherman Act. Verax claims that unlike "the Postal Service," the Red Cross can "set[] its prices with impunity." Pet. 4. But "[t]he Postal Service *does* operate nonpostal lines of business, for which it is free to set prices independent of the Commission, and in which it may seek profits to offset losses in the postal business." 540 U.S. at 747-48 (emphasis added). Verax also argues that the Red Cross's "independen[ce]" from the government means it must be a "person" under the Sherman Act. Pet. 17. But the Postal Service, too, had "a high degree of independence from other offices of the Government" and, as noted, sets prices for some products "independent" of the government. *Flamingo*, 540 U.S. at 746-48.

Verax's assertion that the district court's decision conflicts with the Sixth Circuit's approach is unavailing. Soon after *Sea-Land*, the Sixth Circuit held that the federal reserve banks—federal corporations with private shareholders—are not "persons" under the Sherman Act. *Jet Courier Servs., Inc. v. Fed. Reserve Bank of Atlanta*, 713 F.2d 1221, 1228 (6th Cir. 1983). Later, the Sixth Circuit determined *sua sponte*, in a passage immaterial to the outcome, that the Tennessee Valley

Authority was subject to the Sherman Act simply because Congress had statutorily designated it a federal corporation, even though some courts had treated it as the functional equivalent of a federal instrumentality for certain purposes. *McCarthy*, 466 F.3d at 412-14. Verax now suggests a conflict between *McCarthy* and *Jet Courier*, Pet. 15, but it previously *agreed* with *Jet Courier*'s analysis: Verax told the district court that "Federal Reserve banks are both government corporations *and non-persons under the Sherman Act*." Mot. Interlocutory Appeal 10 n.6, Dkt. 53 (emphasis added). Verax cannot now assert a conflict with a Sixth Circuit decision whose reasoning it rejected. Pet. 15 (questioning whether "*Jet Courier* is good law" and noting that it may not be "distinguishable" from "*McCarthy*").[4]

Finally, Verax relies on the position of the Antitrust Division in a statement of interest filed in the district court. Pet. 20. But the Antitrust Division receives no deference for its interpretation of the Sherman Act. Nor would any such deference be warranted because the statement of interest directly conflicts with the United States' categorical position in *Flamingo* that "Congress did not intend agencies or instrumentalities of the United States to be 'persons' under [the antitrust] laws."

---

[4] The Antitrust Division agreed that *Jet Courier* remains good law and that the federal reserve banks are not subject to the Sherman Act despite being federal corporations. Pet. Ex. 3 at 4, 6 (U.S. DOJ Statement of Interest). But if there were any conflict, *Jet Courier*'s earlier analysis controls. *See United States v. Reid*, 888 F.3d 256, 258 (6th Cir. 2018). And *Flamingo* could not abrogate that holding, *contra* Pet. 14-15, because it left open the question whether corporate form would affect the analysis, 540 U.S. at 746.

United States Brief for the Petitioner, *Flamingo*, 540 U.S. 736, 2003 WL 21663261, at *8.

## C. An Immediate Appeal Would Not Materially Advance The Ultimate Termination Of This Litigation

Verax has also failed to show that an immediate appeal would materially advance termination of the litigation. To start, just as the alternative grounds preclude the question here from being controlling, they likewise mean an immediate appeal would not materially advance the litigation. "When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) (alteration in original) (citation omitted). An immediate appeal would not change the trajectory of this case: if this Court grants an immediate appeal and reverses the district court's decision, the district court on remand would need to consider (and should adopt) the Red Cross's alternative argument; if this Court denies an immediate appeal and reverses after *final* judgment, then the district court would still need to consider (and should adopt) the Red Cross's alternative argument. The result is the same—and no time has been saved by allowing an early appeal. *See McFarlin*, 381 F.3d at 1259.

Verax claims that "review will likely reduce costs" by "avoiding the prospect of reversal after judgment, followed by duplicative discovery, summary judgment, and trial." Pet. 18. Even accepting the flawed premise, this argument would favor

interlocutory review of numerous orders denying or partially granting a motion to dismiss. After all, unnecessary district court proceedings could always be avoided should the appellate court reverse. But this Court has a "general rule" against "interlocutory appeals from a denial of a motion to dismiss," *Caraballo-Seda*, 395 F.3d at 9, that applies with even greater force to partial grants, *see supra* at 12-13.

Verax falls back on Judge Saris's expertise on the district court bench. Pet. 18. But Section 1292(b) affords *this Court* discretion to determine whether to hear an interlocutory appeal. In declaring that interlocutory appeals are the exception, to be used sparingly, this Court has carefully guarded that docket. It rejects the kinds of justifications that would be available to parties in any civil case. *See, e.g.*, *Palandjian*, 782 F.2d at 314. And, consistent with its teaching that Section 1292(b) appeals are rare, this Court routinely declines to hear interlocutory appeals certified by district courts. *See, e.g.*, *Boniface v. Viliena*, No. 19-8027 (1st Cir. Feb. 19, 2020); *Winters v. Ocean Spray Cranberries, Inc.*, No. 18-8001 (1st Cir. May 8, 2019); *Soto-Santiago v. Corporacion del Fondo del Seguro Estado*, No. 18-8026 (1st Cir. Mar. 7, 2019); *Meijer Distrib., Inc. v. Ranbaxy Inc.*, No. 17-8008 (1st Cir. Dec. 28, 2018). It should do the same here.

# CONCLUSION

For the foregoing reasons, this Court should deny the petition for interlocutory review.

Dated: July 18, 2024

Respectfully submitted,

*/s/ Melissa Arbus Sherry*
Melissa Arbus Sherry
Amanda P. Reeves
Jennifer L. Giordano
Peter E. Davis
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

William J. Trach
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

Alfred C. Pfeiffer, Jr.
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

*Counsel for Defendant-Respondent American National Red Cross*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this answer complies with the word limit of Federal Rule of Appellate Procedure 5(c)(1) because it contains 5,194 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

I further hereby certify that this answer complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Melissa Arbus Sherry*
Melissa Arbus Sherry

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 18th day of July, 2024, electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. Participants in the case that are registered CM/ECF users will be served by the CM/ECF system. Pursuant to Federal Rule of Appellate Procedure 25(c)(1)(B), on this 18th day of July, 2024, I also caused the following two attorneys who are not registered in the CM/ECF system to be served by US Mail at the addresses below:

Joseph Adamson, Esq.
U.S. Department of Justice
450 5th Street NW, Suite 4100
Washington, DC 20530

Elizabeth K. Keeley, Esq.
Butters Brazilian LLP
420 Boylston Street, 4th Fl
Boston, MA 02116-0000

*/s/ Melissa Arbus Sherry*
Melissa Arbus Sherry